DISTRICT OF OREGON
**FILED**
**September 25, 2026**
**Clerk, U.S. Bankruptcy Court**

Below is an opinion of the court.

TERESA H. PEARSON
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Donald Joseph Hefflinger and Michelle Marie Griffiths,<br><br>Debtors. | Case No. 16-33355-thp7 |
| Donald Joseph Hefflinger and Michelle Marie Griffiths,<br><br>Plaintiffs,<br><br>v.<br><br>State of Oregon, Department of Consumer and Business Services, Division of Financial Regulation,<br><br>Defendant. | Adv. Proc. No. 25-03095-thp<br><br>MEMORANDUM DECISION[1] |

Plaintiff Donald J. Hefflinger asserts in this adversary proceeding that the State of Oregon, Department of Consumer and Business Services, Division of Financial Regulation (the "DCBS") has violated the discharge injunction. The DCBS denies it violated the discharge

[1] This disposition is specific to this case. It may be cited for whatever persuasive value it may have.

injunction, asserting that it was collecting a non-dischargeable debt for civil penalties. The court held a one-day trial. Mr. Hefflinger represented himself. The DCBS appeared through its counsel Justin Leonard.

For the reasons set forth below, this court finds in favor of the DCBS. The DCBS did not violate Mr. Hefflinger's discharge injunction because (a) a portion of the debt the DCBS was collecting was for violations occurring after the bankruptcy case was filed, and (b) the debt the DCBS was collecting was a non-dischargeable debt for civil penalties.

**Procedural History**

1. Donald Joseph Hefflinger and Michelle Marie Griffiths filed a voluntary chapter 7 petition on August 31, 2016.[2] They listed the Oregon Department of Financial Regulation on their bankruptcy schedule E/F as a creditor owed a "Mortgage licensing penalty" debt of $8,000.[3]

2. While Mr. Hefflinger and Ms. Griffiths' bankruptcy case was open, the court entered a stipulated order granting creditor J.B. relief from the automatic stay to proceed with Multnomah County Case No. 15CV03723, subject to certain conditions.[4] The DCBS did not sign this stipulated order nor was the DCBS a party to that Multnomah County civil case.

3. Mr. Hefflinger and Ms. Griffiths received their chapter 7 discharge on January 12, 2017.[5]

4. Mr. Hefflinger filed his adversary proceeding complaint against the DCBS on December 19, 2025, asserting claims pursuant to 11 U.S.C. §§ 362 and 547.[6]

5. Mr. Hefflinger amended his complaint twice.[7]

---

[2] ECF No. 1, filed on Aug. 31, 2016, in *In re Donald Joseph Hefflinger and Michelle Marie Griffiths*, Bankruptcy Court for the District of Oregon case no. 16-33355-thp7 (the "Main Bankruptcy Case").
[3] *Id.*; Plaintiff's trial Exhibit A.
[4] Order Drafted on: 12/20/2016 re: Relief from Debtor Stay, ECF No, 26, entered on Dec. 22, 2016, in the Main Bankruptcy Case.
[5] Order Discharging Debtor, ECF No. 29, entered on Jan. 12, 2017 in the Main Bankruptcy Case.
[6] Complaint and Demand for Jury Trial, ECF No. 1, filed Dec. 19, 2025. Although Ms. Griffiths was listed on the caption and described as a plaintiff in the complaint, she did not sign the complaint. Mr. Hefflinger, who is not an attorney, is not authorized to sign on her behalf.
[7] Complaint and Demand for Jury Trial, Amended Complaint, ECF No. 7, filed Dec. 30, 2025; Amended Complaint and Demand for Jury Trial, ECF No. 17, filed Mar. 5, 2026 (the "Second

6. Mr. Hefflinger's second amended complaint asserted claims pursuant to 11 U.S.C. §§ 362(a)[*sic*] and 524(a)(2).[8]

7. The DCBS filed an amended motion to dismiss this adversary proceeding, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b), for failure to state a claim upon which relief can be granted.[9]

8. Mr. Hefflinger responded to the motion to dismiss, citing, among other things, 11 U.S.C. §§ 362(a)[*sic*] and 524(a)(2) and arguing that his discharge prevented the DCBS from pursuing collection action against him.[10]

9. The court held a hearing on the DCBS's motion to dismiss on March 24, 2026.[11] At that hearing, the court dismissed all of Ms. Griffiths' claims because she did not sign the complaint, amended complaint, or the response to the motion, and she failed to appear at any hearings.[12] The court dismissed Mr. Hefflinger's claims under 11 U.S.C. section 362 and 547 for failure to state a claim upon which relief can be granted.[13] The court determined that the sole remaining issue for trial was whether there was a violation of the discharge injunction under 11 U.S.C. § 524(a) and ordered that the court would hold an evidentiary hearing on that issue.[14]

10. The DCBS filed its answer to the second amended complaint on April 8, 2026, denying liability and asserting an affirmative defense that collection of nondischargeable penalties does not violate the discharge injunction.[15]

---

Amended Complaint"). Again, although Ms. Griffiths was listed on the caption and described as a plaintiff in both these amended complaints, she did not sign the amended complaints.

[8] Second Amended Complaint, p. 1.

[9] State of Oregon's Amended Motion to Dismiss Adversary Proceeding, ECF No. 22, filed Mar. 11, 2026.

[10] Plaintiff(s) Response to Defendant Amended Motion to Dismiss. Plaintiff(s) Motion to Deny Amended Dismissal, ECF No. 25, filed Mar. 20, 2026, p. 4. Again, although the motion was nominally filed on behalf of both Donald J. Hefflinger and Michelle M. Griffiths, Ms. Griffiths did not sign the motion.

[11] Minute Order and Record of Proceeding, ECF No. 26, filed Mar. 25, 2026.

[12] *Id.*

[13] *Id.* The court also dismissed any claims under Title 18, which Mr. Hefflinger orally asserted at the hearing but never included in his complaint.

[14] *Id.*

[15] State of Oregon's Answer to Second Amended Complaint, ECF No. 28, filed Apr. 8, 2026.

11. On July 25, 2026, Mr. Hefflinger filed a "response to defendant (DFR) retaliation," which appeared to include a motion for punitive damages.[16] This document was set for a non-evidentiary hearing at the same time as the final evidentiary hearing on the sole remaining claim for violation of the discharge injunction.[17]

12. At the hearing on September 16, 2026, the parties agreed that the "response to defendant (DFR) retaliation" should be treated as a request to increase the damages demanded in the complaint, and the court tried the sole remaining claim for violation of the discharge injunction on that basis.

**<u>Jurisdiction</u>**

This court has jurisdiction of this case under 28 U.S.C. § 1334, and authority to decide this issue as a core proceeding under 28 U.S.C. § 157(b)(2).

**<u>Facts</u>**

Based on the evidence admitted at trial and the court's assessment of witness credibility, the court finds as follows:

1. On April 8, 2016, the DCBS issued its Final Order to Cease and Desist, Order Granting Conditional Mortgage Loan Originator License, Order Assessing Civil Penalties, and Consent to Entry of Order (the "Consent Order").[18] Under the Consent Order, the DCBS assessed $8,000 in civil penalties against Mr. Hefflinger for one violation of ORS 86A.224(1)(c), four violations of ORS 86A.203, and one violation of ORS 86A.236(3).

2. Mr. Hefflinger paid $600 of the amount due in the Consent Order before he defaulted.

---

[16] Plaintiff(s) Response to Defendant Retaliation (DFR). Plaintiff(s) Motion for Defendant Punitive Damages, ECF No. 34, filed. July 25, 2026. Again, although the motion was nominally filed on behalf of both Donald J. Hefflinger and Michelle M. Griffiths, Ms. Griffiths did not sign the motion.

[17] Notice of Hearing, ECF No. 35, filed July 27, 2026.

[18] Plaintiff's Exh. H, ECF No. 56-8, filed Sept. 9, 2026, pp. 6-13.

3. After Mr. Hefflinger defaulted on the Consent Order, he asked that the Consent Order be rescinded. The DCBS referred the matter to the Office of Administrative Hearings for a contested case hearing[19] and returned the $600 paid on the Consent Order to Mr. Hefflinger.

4. On December 8, 2016, the Division issued an Amended Order to Cease and Desist, Order Revoking Mortgage Loan Originator License, Order Assessing Civil Penalties, Order Denying License Renewal, and Notice of Right to a Hearing (Amended Notice) to Mr. Hefflinger,[20] assessing civil penalties of $10,000.

5. On January 24, 2018, the Division issued a Second Amended Order to Cease and Desist, Order Revoking Mortgage Loan Originator License, Order Assessing Civil Penalties, Order Denying License Renewal, and Notice of Right to a Hearing.[21]

6. On February 1, 2018, the Division issued a Third Amended Order to Cease and Desist, Order Revoking Mortgage Loan Originator License, Order Assessing Civil Penalties, Order Denying License Renewal, and Notice of Right to a Hearing.

7. On March 14, 2018, the Division issued a Fourth Amended Order to Cease and Desist, Order Revoking Mortgage Loan Originator License, Order Assessing Civil Penalties, Order Denying License Renewal, and Notice of Right to a Hearing.

8. On February 10, 2020, the Division issued a Fifth Amended Order to Cease and Desist, Order Revoking Mortgage Loan Originator License, Order Assessing Civil Penalties, Order Denying License Renewal, and Notice of Right to a Hearing.[22]

9. On May 28, 2021, the Office of Administrative Hearings issued a Proposed Order.[23] The proposed order gave Mr. Hefflinger the right to file exceptions to the order.[24]

10. On July 8, 2021, the DCBS issued its Final Order to Cease and Desist, Revoking Mortgage Loan Originator License, and Assessing Civil Penalties (the "Final Order").[25] Under

---

[19] Defendant's Exh. A, ECF No. 50, filed Sept. 9, 2026, p. 1.
[20] Defendant's Exh. A, p. 2; Plaintiff's Exh. I, ECF No. 56-9, pp. 4-13.
[21] Defendant's Exh. A, p. 3.
[22] Defendant's Exh. A, p. 5.
[23] Defendant's Exh. C, ECF No. 50, filed Sept. 9, 2026.
[24] Defendant's Exh. C, p. 35.
[25] Defendant's Exh. A.

the Final Order, the DCBS assessed $25,000 in civil penalties against Mr. Hefflinger. The DCBS imposed $5,000 for violations of ORS 86A.203 (acting as a mortgage loan originator without a license by accepting applications for residential mortgage loans and offering or negotiating terms of residential mortgage loans with four consumers), $5,000 for violations of ORS 86A.154 and ORS 86A.236 (knowingly making an untrue statement of material fact to a consumer, knowingly making false statements or material misstatements of fact on an application for licensure, and knowingly filing or causing to be filed untrue complaints regarding Ms. Boumann), and $15,000 for committing three violations of ORS 86A.154 and ORS 86A.236 (filing three false medical notes on June 2019, August 2019, and October 2019).[26]

11. In 2022, Mr. Hefflinger was terminated from his job as a mortgage loan originator at M&T Bank, sometime after the DCBS contacted M&T Bank.

12. The Oregon Department of Revenue offset tax refunds owed to Mr. Hefflinger to collect debts owed to DCBS, specifically:[27]

| Tax Year | Amount |
|---|---|
| 2021 | $637.59 |
| 2022 | $2,548.00 |
| 2023 | $2,374.00 |
| 2024 | $2,123.00 |

13. Mr. Hefflinger paid Umpqua Bank a $125 fee after the bank processed a DCBS garnishment against his account on June 20, 2023. Because the account lacked sufficient funds, Umpqua remitted nothing to DCBS.

14. On October 16, 2025, the DCBS recorded a Distraint Warrant on Mr. Hefflinger's real property in Clackamas County, Oregon, in the amount of $23,081.04, for the remaining amounts due on the Final Order.

---

[26] Defendant's Exh. A, pp. 34-35.

[27] Second Amended Complaint, p. 4; Defendant's Trial Brief, ECF No. 53, filed Sept. 9, 2026, pp. 6-7 (not disputing these allegations).

15. Amounts that the DCBS recovers on civil penalties are paid to the State of Oregon's General Fund and are not available for use by the DCBS. ORS 86A.224(3)(a) authorizes a civil penalty of up to $5,000 for each separate violation. The penalties are not measured by actual pecuniary loss.

16. The DCBS has no known monetary claims against Mr. Hefflinger, other than the Final Order and its assessment of civil penalties.

17. Mr. Hefflinger applied for, and was granted, an insurance producer's license without disclosing his prior disciplinary action about his mortgage loan originator license on his application. In 2026, the DCBS informed Mr. Hefflinger that it would take immediate action to revoke that license based on his untrue statements unless Mr. Hefflinger voluntarily surrendered the license.

18. Mr. Hefflinger voluntarily surrendered his insurance producer's license.

**Analysis of Claim**

A bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor."[28] However, certain debts are not dischargeable in a chapter 7 case.[29] Debts that arise after the bankruptcy case is filed are not discharged.[30] And, as is specifically relevant here, a debt is not dischargeable "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . ."[31] "Nondischargeable debts are not subject to the discharge injunction."[32] There is nothing in section 524(a)(2) that prohibits a state agency from enforcing its licensure rules as a regulatory matter.

---

[28] 11 U.S.C. § 524(a)(2).
[29] See generally 11 U.S.C. § 523(a).
[30] 11 U.S.C. § 727(b) ("discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter"). Claims arise, for purposes of discharge in bankruptcy, at the time of the events giving rise to the claim. *O'Loghlin v. County of Orange*, 229 F.3d 871, 874 (9th Cir. 2000).
[31] 11 U.S.C. § 523(a)(7).
[32] *Lakhany v. Kahn (In re Lakhany)*, 538 B.R. 555, 562 (9th Cir. BAP 2015), citing *Boeing N. Am., Inc. v. Ybarra (In re Ybarra),* 424 F.3d 1018, 1027 n. 11 (9th Cir.2005).

Of the $25,000 in civil penalties assessed in the Final Order, $15,000 of those penalties were attributable to Mr. Hefflinger's conduct in June, August, and October of 2019, more than three years after he filed bankruptcy. That portion of the debt could not be discharged, because only debt that arises before the bankruptcy case is filed can be discharged.

All the amounts assessed in the Final Order were civil penalties payable to the State of Oregon and were not compensation for an actual pecuniary loss. Such debt could not be discharged in Mr. Hefflinger's bankruptcy case. Civil penalties are not dischargeable under Section 523(a)(7). That provision applies when a debt "(1) [is] a fine, penalty, or forfeiture; (2) [is] payable to and for the benefit of a governmental unit; and (3) [does] not constitute compensation for actual pecuniary loss."[33] Oregon law authorizes a civil penalty of up to $5,000 for each separate violation,[34] amounts recovered are deposited in the State's General Fund and are unavailable for DCBS's use, and the penalties issued against Mr. Hefflinger are not tied to DCBS's enforcement expenses, allocable to the administrative proceeding, or otherwise measured by actual pecuniary loss. Thus, the remaining $10,000 assessed in the Final Order is excepted from discharge under Section 523(a)(7) as a civil penalty.

The DCBS did not violate the discharge injunction when it acted to collect the civil penalties assessed in the Final Order, because none of that debt was dischargeable.

Mr. Hefflinger appears to believe that the order granting J.B. relief from the automatic stay so that she could pursue her civil case against him in Multnomah County somehow is binding on the DCBS or otherwise prohibits the DCBS from collecting civil penalties against Mr. Hefflinger. The DCBS was not a party to that relief from stay order. That relief from stay order is not relevant to whether the DCBS violated the discharge injunction.

Mr. Hefflinger also appears to confuse the relief from stay order in favor of J.B. with the general discharge order. The relief from stay order had no impact on the discharge order or the scope of discharge granted under the Bankruptcy Code.

---

[33] *State Bar of Nevada v. Wike (In re Wike)*, 145 F.4th 1221, 1227 (9th Cir. 2025), quoting *Kassas v. State Bar of California*, 49 F.4th 1158, 1163 (9th Cir. 2022).

[34] ORS 86A.224(3)(a).

DCBS's licensing actions likewise did not violate § 524(a)(2). That provision prohibits acts to collect a discharged debt, but it does not prohibit regulatory action taken for a reason independent of debt collection. The evidence showed that DCBS's actions were based on Mr. Hefflinger's unlicensed mortgage loan originator activity and false statements on his licensing application, not an effort to compel payment of a discharged debt.

There is nothing in the discharge injunction that prohibited the DCBS from enforcing its regulations to prevent Mr. Hefflinger from acting as an unlicensed mortgage broker for M&T Bank or from working under an insurance producer's license procured based on false statements on his application.

**Conclusion**

The DCBS did not violate Mr. Hefflinger's discharge injunction by collecting the civil penalties imposed in the Final Order or by taking the regulatory actions at issue. The court will enter judgment in favor of the DCBS.

# # #